THE B. & M. R. R. Co. IN NEBRASKA, PLAINTIFF IN ERROR, v. SAMUEL B. ROSE, DEFENDANT IN ERROR.

1. **Railroad Company:** REGULATION CONCERNING THE CARRYING OF PASSENGERS ON FREIGHT TRAINS. A railroad company has the power to make, and in a reasonable manner to enforce, a rule or regulation to carry passengers on its freight trains, either not at all, or only upon the condition that they provide themselves with tickets.

2. **Enforcement of such Regulation:** NOTICE. In the enforcement of such regulation previous notice thereof must be given. It is not, however, required of a railroad company to bring home to a passenger actual notice of the regulation before the train leaves the station where he entered the car, to justify his expulsion therefrom, for want of a ticket, at any other than a regular stopping place. All that is required is, that a suitable general notice to the public be given for such length of time before the regulation is put into operation, as to make it reasonably certain that all passengers in the exercise of due diligence must become aware of its existence. And the right of expulsion for non-compliance with such regulation by a passenger may be exercised after leaving the station, at any suitable place, under all the circumstances of the particular case.

ERROR to the district court of Otoe county. It was an action brought by Rose for the recovery of damages alleged to have been sustained by him in consequence of his removal from a train of the B. & M. R. R. Co.

The plaintiff in his petition alleged that the weather was exceedingly warm at the time, and that he was ill, which fact was known to the conductor, and that he was willing and offered to pay a reasonable compensation to the conductor in charge of the train, and that the conductor removed him and he was compelled to walk to Waverly, the nearest station to where he was removed, and that his illness was increased and aggravated thereby, and that he was damaged, etc.     The answer of the company in its first count contained a general denial, and in its second count set up a regulation that passengers would not be carried on freight trains unless they were provided with tickets, and also alleged that such regulation was known to the plaintiff, Rose.     The answer further alleged, that "by a further rule or regulation of said defendants, the conductors of all freight trains were required to eject from their cabooses, cars, and trains, all *passengers* who had not provided themselves with tickets or the proper vouchers."

To this answer Rose filed a reply, denying each and every allegation contained therein, and also alleged that the company was accustomed to carry passengers by its freight trains, and did so regularly, and provided its freight trains with cars for carrying passengers thereon.     And that the railroad company was carrying passengers on the train from which he was removed, and that there were passengers on said train traveling thereon, and that said train was engaged in carrying passengers.     Trial before POUND, J., and a jury resulted in a verdict and judgment against the company for $500.00, from which they prosecuted this petition in error.     .

*T. M. Marquett,* for plaintiff in error, cited on question of carrying passengers on freight train: *Arnold v. I. C. R.*

*R.*, 83 Ill., 273.   *Eaton v. D. L. & W.R. R. Co.*, 57 N. Y.,
382.   *Creed v. Penn'a R. R. Co.*, 86 Pa. St., 146.   *Ill.
Cent. R. R. v. Johnson*, 67 Ill., 312.   *O. & M. R. Co. v.
Swarthout*, 67 Ind., 567.   *Wilton v. U. R. R. Co.*, 107
Mass., 108.   *Dunn v. Grand Trunk R. R.*, 58 Me., 187.
Hutchinson on Carriers, 447.   As to notice : *C. & A. R.
R. v. Randolph*, 53 Ill., 510.   *Eaton v. R. R. Co.*, 57 N.
Y., 382.   *Dietrich v. P. R. R. Co.*, 71 Pa. St., 432.
*O. & M. R. Co. v. Applewhite*, 52 Ind., 540.   *Johnson v.
Concord R. Co.*, 46 N. H., 213.   *State v. Overton*, 24 N.
J. L., 435.   *State v. Goold*, 53 Me., 279.   *T. P. & W.
R. Co. v. Patterson*, 63 Ill., 304.   *Law v. Ills. Cent. R. R.*,
32 Iowa, 536.   Also: Shearman & Redf. on Neg., 292.
*U. P. R. R. Co. v. Nickols*, 8 Kan., 518.   *C. C. & C.
R. Co. v. Bartram*, 11 Ohio St., 457.

*Ransom & Covell*, for defendant in error, cited Con-
stitution, sec. 4, Art. II.   *C. & A. R. R. v. Flagg*, 43
Ill., 364.   Hutchinson on Carriers, 570.   *C. & C. R.
R. Co. v. Bartram*, 11 Ohio St., 457.   *Ills. & C. R. R.
Co. v. Sutton*, 53 Ill., 397.   *K. P. R. R. Co. v. Kessler*,
18 Kans., 523.   Gen. Stats., 195, 203, 198.   Shearman
& Redf. on Neg., 304.   *McDonald v. C. & N. W. R. R.
Co.*, 26 Ia., 124.   *Maroney v. Old C. & N. R. R. Co.*,
106 Mass., 153.   Gen. Stat., 195, sec. 109.

LAKE, J.

The only questions to be considered in this case
were raised by certain of the instructions given to the
jury.

It appears  on the twenty-first day of July, 1879,
the defendant in error (plaintiff below), desiring to go
from Waverly, in Lancaster county, to Lincoln, went
upon one of the freight trains of the plaintiff in error,
provided with what is called a caboose car, for that
purpose, from which he was ejected by the conductor

of the. train, a short distance out of Waverly, for the reason that he had not provided himself with a ticket, as a rule or regulation of the company then in force required, and after he had tendered to the conductor the customary fare in money.

One of the instructions to which exception was taken in the court below, and which fairly presents the principal point of difference, was in these words, viz.:

"The rule or regulation claimed by the defendant to have been adopted by it, that passengers would not be carried on freight trains unless they first provided themselves with tickets, will not justify defendant in having removed plaintiff from, or compelled him to leave, the freight train at a point on defendant's road not a regular station or stopping place, because plaintiff had not complied with such rule or regulation, unless plaintiff knew of such rule or regulation before he entered upon the train, or was informed that the defendant had such a rule or regulation before the train left the station where he took passage, provided plaintiff was willing and offered to pay for his passage."

It is clear, from the evidence, that the rule of the company here referred to was duly issued and published on or about the first day of June, 1879, and that copies thereof, in imposing form, were posted in all of the company's passenger stations, and in the cabooses employed on the road. The testimony of the station agent at Waverly, which was not contradicted, is to the effect that for more than a month before the day of the occurrence complained of, two of these notices had remained posted in the most conspicuous places in the waiting room at that station, and were still there on that day. It is clear, also, that the defendant in error had no actual knowledge of this regulation until informed by the conductor after the train had started, and just before he was .put off. That he offered to pay

for his passage in money to the conductor, is also conceded.

We believe the authorities are generally in accord as to the right of a railroad company to make, and, in a proper manner to enforce, a rule or regulation to carry passengers on its freight trains, either not at all, or only upon the condition that they are provided with tickets, and prohibiting the collection of fare by conductors of such trains. *Chicago & Alton R. R. Co. v. Flagg*, 43 Ill., 364. *Arnold v. I. C. R. R. Co.*, 83 Id., 273. *Eaton v. Railroad Co.*, 15 Am. Repts., 513. *The C. C. & C. R. Co. v. Bartram*, 11 Ohio St., 457. *Law v. Ill. Cent. R. Co.*, 32 Iowa, 534. The point on which they are not harmonious is as to the manner of its enforcement, some courts holding, as was held by the court below in the instruction quoted, that actual notice of the rule must be brought home to the passenger before the train leaves the station in order to justify his expulsion therefrom for want of a ticket at any other than a regular stopping place. *Ill. Cent. R. R. Co. v. Sutton*, 53 Ill., 397. While others, with better reason, we think, only require a suitable general notice to the public for such length of time before the rule is to be put in operation as to make it reasonably certain that all passengers in the exercise of due diligence must become aware of it; and that the right of expulsion for non-compliance with the requirement may be exercised in any suitable place, under all the circumstances of the particular case. *C. C. & C. R. R. Co. v. Bartram*, 11 Ohio St., 457. *Law v. Ill. Cent. R. R. Co.*, 32 Ia., 534.

As to the notice here given of the regulation, we are of opinion that it was reasonable and all that should be required of the company in this particular to put passengers seeking conveyance on a freight train on their guard. With reasonable diligence on his part,

we think the defendant in error would have become informed of the necessity of providing himself with a ticket before entering the car. He knew that the train on which he purposed to go was not intended for passengers generally, but mainly devoted to the transportation of freight, and that the caboose which he entered was not fitted up for the accommodation of the traveling public generally. When he applied to the agent of the company to check his baggage, he was told that no checks were given for that train, and that if his baggage was sent it must go as freight, and be paid for as such. He accordingly had it billed as freight and forwarded. It would seem that after all this that common prudence would have led him to inquire whether he himself could go on the train as a passenger, and, if so, what his duties were in that regard. But, however that may be, we are of opinion that his alleged ignorance of the rule requiring him to provide himself with a ticket, which had been so long and conspicuously published, cannot avail him, and that the jury should have been so told, as was requested by one of the instructions tendered by the attorney for the company, but refused by the court.

This, together with a single other exception, to which we will hereafter advert, is all that we discover objectionable in the charge given to the jury. The only fault we find with the instruction quoted, and with others of like import, lies in their being conformed to the supposed duty on the part of the company, to give actual notice of the regulation to each individual passenger before it could be enforced against him. Holding, as we do, that the published notice was sufficient to put the passenger on his guard, and that he was bound by it, it follows that the tender of fare to the conductor was a void act, conferring no right whatever, for the simple reason that the con-

ductor had no authority to receive it.   *C. C. & C. R. R. Co. v. Bartram*, *supra.*

Upon the starting of the train, it was of course the duty of the conductor in charge, as soon as practicable, and as is customary on such freight trains on well regulated roads, to repair to the caboose and call upon passengers for the production of tickets, so as not to delay unreasonably the enforcement of the regulation by the ejection of those not rightfully there.   In this instance, we discover no evidence of unreasonable delay.   According to the testimony of the defendant in error himself, the train was stopped to put him off within two and a half miles from the station, while the more satisfactory evidence is that it was but about half that distance.   But taking his own estimate as correct, if proper allowance be made for the distance run while signaling and stopping the train, it is quite evident there was no unusual delay in this particular.   Indeed we do not understand that it is claimed there was unreasonable delay after leaving the station in calling for the ticket, and stopping the train, but that the failure in the performance of duty by the company lay entirely in the neglect to enforce the regulation before starting. And such, as we gather from the instructions, was the view taken by the court.

The only other objectionable feature of the charge consists in its giving importance to the attack of cholera-morbus, from which the defendant in error suffered at Nebraska City, three days after being put off the train.   There was no such relation between the alleged cause and effect, shown by the evidence, as to justify the making of that brief ailment a factor in the cause.

For these reasons, the judgment must be reversed and a new trial awarded.

REVERSED AND REMANDED.

MAXWELL, CH. J., dissenting.

I concur in the reversal of the judgment in this case upon the sole ground that the damages are excessive. I also concur in the proposition that a railroad company running regular passenger trains for the carriage of passengers may exclude them from freight trains altogether, or as a condition precedent to entering the cars, may require passengers to purchase tickets. But no case has been cited, and I think none can be found, where, even if the rules require the passenger to purchase a ticket before entering the cars, if he is permitted to enter and take a seat therein, he can be ejected between two stations, if he offers to pay his fare. The rule must be enforced by excluding him from the car before the train leaves the station, not by ejecting him between stations. The by-laws of a corporation must not infringe the charter of the corporation or the laws of the state, must not be unreasonable, and must be within the range of the general powers of the corporation. 1 Redfield on Railways and cases cited in note 1. Section 107 of chapter 11 of the General Statutes, entitled "Railroad Companies," provides that "if any passenger shall refuse to pay his fare, it shall be lawful for the conductor of the train and the servants of the corporation to put him and his baggage out of the cars, using no unnecessary force, at any place within five miles of any station." The powers of a corporation are derived entirely from the statute. A railroad company is a common carrier for hire of passengers and freight. The law is the paramount rule of action for the government of its affairs, and no rule can have any validity that contravenes the statute. A by-law, therefore, to expel a passenger between stations who offers to pay

his fare is an absolute nullity. If it were not so the corporation would be greater than the power creating it. This question was before the supreme court of Illinois in the case of *Illinois Central R. R. Co. v. Sutton*, 53 Ill., 391, 401. The court say: "If the order was given conductors of freight trains, before leaving a station, to visit the caboose car and demand a sight of the tickets, and if any passenger is there without a ticket, peremptorily decline to take him, and if he persists in remaining, then forcible, if necessary, expel him from the car. Either this rule must be adopted, or the conductors of such train must be authorized to receive fares." In the case of *Roach v. Karr*, 18 Kans., 529, the court, in speaking of the enforcement of the rule, say: "Such a rule ought also to be enforced by *preventing* passengers from taking passage on a freight train, rather than by *putting them off* after half of the journey is completed." If passengers lawfully entering a car and ready and willing to pay fare, can be ejected from the cars miles away from any station, or perhaps from a residence, for the simple failure to comply with a rule of which they may have been ignorant, it will be attended with great hardship. And as the rule must apply to all, alike to the infant and invalid as well as the robust and strong, and at all seasons of the year, there is reason to suppose that in some cases, at least, its enforcement will be attended with permanent injury to the health, if not loss of life.