MILLER GRAIN AND ELEVATOR COMPANY, *Appellant*, v. UNION PACIFIC RAILWAY COMPANY.

In Banc, May 4, 1897.

1. **Railroad:** LIABILITY: FREIGHT OVER SEVERAL ROADS: NEBRASKA LAW: EVIDENCE. A railroad in Nebraska received a car of freight to "be transported to Council Bluffs," but the car was to be shipped to East St. Louis, but in the bill of lading which was signed by the shipper, the road's liability was specifically limited to a shipment to Council Bluffs, its terminus. There it was turned over to another road, and on its arrival in East St. Louis was delivered to the wrong person and lost, and the shipper's assignee sued the Nebraska road to recover the worth of the cargo. *Held*, that under the laws of Nebraska the liability of the first road ceased on the safe delivery of the car in a reasonable time in Council Bluffs; *held*, also, in the absence of a contract, and of a statute to the contrary, that a road is bound only to safely carry over its own road, and to safely deliver to the next connecting carrier; *held*, also, that under the common law, a railroad which undertakes to deliver freight at points not on its road, can not limit its liability to losses occurring on its own line; *held*, also, as a matter of evidence, that the issuing of a bill of lading for property to be transferred to a depot on another road is evidence of a contract to carry such property to the place of its destination, and, in such case, the receiving road is liable for the loss to the same extent as if it had occurred on its own route.

2. ———: NEBRASKA CONSTITUTION AND STATUTE. A clause of the Nebraska Constitution and a statute considered and held to mean that railroads in Nebraska are governed by the common law, *and* that whenever two or more railroads are connected together, the company owning the road, receiving the freight and agreeing to transport it to any place on the line of either of said roads, should be liable for the safe delivery to the consignee at its destination.

*Transferred from St. Louis Court of Appeals.*

JUDGMENT OF CIRCUIT COURT AFFIRMED.

This action was begun before a justice of the peace, upon the following statement: "Plaintiff states that it and defendant were at the times hereinafter mentioned

corporations, duly organized according to law, and that defendant is and was a common carrier.

"Plaintiff states that on the sixth day of January, 1892, one W. W. Pool shipped from Pleasonton, Neb., over defendant's road, one carload of No. 2 corn in Car No. 7628, containing 43,620 pounds or 778 bushels, to be delivered to F. C. Swartz & Co., East St. Louis, Ill., and received from defendant a bill of lading therefor; that during the transportation of said corn, said F. C. Swartz & Co. sold said corn to plaintiff and indorsed said bill of lading to plaintiff; that said corn was then worth and plaintiff paid for said corn $228.69, and demanded said corn from defendant; that defendant has failed to deliver said corn to plaintiff, and plaintiff has been damaged in the sum of $228.69, for which sum, interest and costs, he prays judgment."

The case was tried on the following agreed statement of facts:

"That on or about the sixth day of January, 1892, one W. W. Pool shipped from Pleasonton, Neb., one car of No. 2 corn in car, S. P. 7628, containing seven hundred and seventy-eight and 52-56 bushels, loaded at Pool Siding, Neb., and marked and consigned to the order of F. C. Swartz & Co., East St. Louis, Ill., care of Louisville, Evansville & St. Louis Railway, which is a railway company and carrier, doing business in the said East St. Louis, Ill.; that said car of corn was received for shipment by the defendant at Pleasonton Station, Neb., on said sixth day or January, 1892, and a bill of lading therefor was issued by the said defendant to said shipper, W. W. Pool, after said car was loaded, and before the same was sealed and shipped, which said bill of lading is on file in this cause, and to which reference is hereby made as if the same were made part hereof:

"UNION PACIFIC RAILWAY COMPANY.

"Bill of Lading No. ———, Pleasonton, Neb., Station, January, 8, 1892.

"Received of W. W. Pool the following described freight, in apparent good order, marked and consigned as noted below, contents and value unknown, to be transported to Council Bluffs, Iowa, and delivered at the railway depot at that point, on payment of freight charges, together with such charges as shall have been advanced on the same. This contract, and the responsibilities of the parties thereto, is limited and controlled by the rules and regulations, as printed on back hereof, also by the terms and conditions of the railway company's printed tariffs, which are hereby declared to be an essential part of this contract. It is understood and agreed that the Union Pacific Railway Company assumes no liability beyond the end of its own line, and that as far as it acts as agent for other parties who participate in the joint transit aforesaid, said parties are separately liable.

"THE UNION PACIFIC RAILWAY COMPANY,
                    "By O. W. WHITE, Agent,
"Original.          "W. W. POOL, Shipper.
"Consignee: Order F. C. Swartz & Co.
"Destination: East St. Louis, Illinois.
"Mark.    Packages.    Des. of Art.    Weights.
                              (Subject to correction.)
          "One Car Corn.                    40,000.
"S. P. 7628          Loaded at Pool Siding.
"Care L., E. & St. L. Ry.

"That said bill of lading was then and there signed by the defendant, by its duly authorized agent, O. H. White, and by said shipper, W. W. Pool, as appears in said bill of lading; that Council Bluffs, Iowa, named in said bill of lading is, and was the end of the defendant's line of railway in the transportation of said car

of corn from its point of shipment to its point of desti-
nation; that said car of corn was, on the eighth day
of January, 1892, delivered by the defendant at its
railway depot, at said Council Bluffs, Iowa, and was,
on the same day and at the said depot, at said Coun-
cil Bluffs, Iowa, delivered by the defendant to
the Omaha and St. Louis Railway, operating in
conjunction with the Wabash Railway, for trans-
portation to its point of destination; that said
Omaha and St. Louis Railway, operating in conjunc-
tion with the Wabash Railway, is and was the most
convenient and feasible route connecting with the de-
fendant in the transportation of said car of corn to its
point of destination; that the defendant does not, and
did not own, control or operate any line of railway
from said Council Bluffs, Iowa, to the point of desti-
nation of said car of corn; that a way-bill was sent by
defendant with said car of corn and delivered to its
said connecting carrier, which said way-bill set forth
the consignee and destination of said car of corn as
contained in the aforesaid bill of lading; that the de-
fendant did not assume or exercise any control over said
car of corn after said car had been delivered by it to
said connecting carrier—Omaha and St. Louis Railway
Company—except such control as the law imposed upon
it; that on or about the twentieth day of January, 1892,
the Wabash Railway Company, by mistake, delivered
said car of corn at said East St. Louis, Illinois, to some
party who was not entitled to receive the same; that
said car of corn, while in transit as aforesaid, was pur-
chased by the plaintiff, at forty cents per bushel, and
said bill of lading was indorsed in blank by F. C.
Swartz & Company to the plaintiff; that said corn was
resold by the plaintiff at more than forty cents per
bushel, if it could have been delivered by plaintiff to
his vendee in a reasonable time after shipment; that ten

days after shipment would have been a reasonable time for the transportation of said corn from its point of shipment to its point of destination; that said car of corn was not, and has not been delivered to the plaintiff; that the market price of said corn, on the track at said East St. Louis, Illinois, was thirty-seven and three eighth cents per bushel on the twentieth day of January, 1892, and thirty-seven and three fourth cents per bushel on the sixteenth day of January, 1892; that the freight. charges amounting to $82.88, from its point of shipment to its point of destination, on said car of corn, if said car of corn had been delivered 'to the plaintiff at said East St. Louis, Illinois, would have been paid by the plaintiff to the last connecting carrier, making such delivery thereof, and the said freight charges would thereupon have been apportioned by said last connecting and delivering carrier among the carriers entitled thereto (including the defendant) and participating in the transportation of said corn."

The plaintiff admits that defendant delivered said corn to its said connecting carrier at Council Bluffs, Iowa, within a reasonable time. The freight charges, to wit: $82.88, should be deducted from any valuation found by the court. It was also then agreed that the Constitution and laws of Nebraska, and the decisions of the court of that State, and the laws and decisions of Illinois, were considered in evidence, so far as applicable; and that said Constitution and laws and decisions of Nebraska and Illinois need not be copied in the record, but the same may be referred to on the trial of this case in the appellate court, so far as applicable, as if the same were bodily incorporated in the record.

Upon appeal from the justice of the peace the case was tried by the circuit court and a judgment was rendered for defendant, and plaintiff appealed to the St. Louis Court of Appeals, where the judgment was

reversed.   On motion afterward made by respondent the appeal was transferred to this court for the reason that the record raises a constitutional question "in that the statute of Nebraska as applied to the contract in suit, undertakes to regulate interstate commerce, and is therefore in violation of section 8, article 1, of the Constitution of the United States, which gives to Congress alone the power to regulate "commerce among the several States."

The Constitution of Nebraska provides: "The liability of railroad corporations as common carriers shall never be limited."   Sec. 4, art. 11.

Section 3, of chapter 16, of the compiled Nebraska statutes, 1891, has this provision:   "Any railroad company receiving freight for transportation shall be entitled to the same rights and be subject to the same liabilities as common carriers.   And whenever two or more railroads are connected together, the company owning either of said roads receiving freight to be transported to any place on the line of either of the roads so connected shall be liable as common carriers for the delivery of such freight to the consignee of said freight in the same order in which such freight was shipped."   These are the only constitutional or statutory provisions cited as bearing upon the question at issue.

*W. H. Clopton* for appellant.

(1)   The contract sued on must be governed by the laws of Nebraska.   *Hartmann v. Railroad*, 39 Mo. App. 88; *Scudder v. Bank*, 91 U. S. 406; *Aymer v. Sheldon*, 12 Wend. (N. Y.) 439; *Stix v. Mathews*, 63 Mo. 371.   The Constitution and laws of Nebraska are totally unlike the Missouri statutes; therefore, the Mis-

souri decisions governing the liability of railroads have no application.    (2)  A common carrier can not, by special agreement, divest itself of its liability as a common carrier.   *Railroad v. Vandeventer*, 26 Neb. 232; *Railroad v. Marston*, 30 Neb. 241; *Railroad v. Witty*, 32 Neb. 282; *Railroad v. Lawbe*, 40 Neb. 374; *Railroad v. Palmer*, 38 Neb. 471.    (3)  At common law defendant would have been liable on the agreed statement of facts.   Under the common law, carriers of goods are insurers of the safety of the goods until delivered to the consignee, even beyond the terminus of the first carrier, except against the acts of God or a public enemy.   *Meeschamp v. Lancaster*, 8 Meeson & W. 425; *Railroad v. Frankenburg*, 54 Ill. 88.    (4)  The Constitution and laws of Nebraska are not in violation of section 8, article 1, Constitution of the United States. They in no sense attempt to regulate commerce between the States, but rather to facilitate it.   *Hart v. Railroad*, 69 Iowa, 485; *Sherlock v. Ailing*, 93 U. S. 99. (5)    The measure of damages is what plaintiff lost. The plaintiff paid 40 cents per bushel, and had resold the corn in transit for more than 40 cents, if it had been delivered in a reasonable time.   Of course they lost that much.    The market price here on the twenty-fifth of January has nothing to do with it.

*Lee & McKeighan* and *Montague Lyon* for respondent.

(1)  According to the terms of the bill of lading sued upon, the respondent is not liable for any loss or damage occurring beyond its own line of railway, the express agreement between the parties being that the freight was to be transported by the respondent to Council Bluffs, Iowa, and delivered at the railway depot

at that point. The respondent had the right, therefore, by special contract, to limit its liability to any loss or damage occurring on its own line of railway. *Coates v. United States Express Co.*, 45 Mo. 238; *Snider v. Adams Express Co.*, 63 Mo. 376; *Witting v. Railroad*, 101 Mo. 631; *Dimmitt v. Railroad*, 103 Mo. 433; *Nines v. Railroad*, 107 Mo. 475; *McCann v. Eddy*, 33 S. W. Rep. 71; *Wheeler v. Railroad*, 3 Mo. App. 358; *F. A. Drew Glass Company v. Railroad*, 44 Mo. App. 416; *Historical Publishing Co. v. Adams Express Co.*, 44 Mo. App. 421; *Hill v. Railroad*, 46 Mo. App. 517; *Bennitt v. Railroad*, 46 Mo. App. 656; *Mulligan v. Railroad*, 36 Iowa, 181; *Railroad v. Simon*, 160 Ill. 648. (2) The shipper is conclusively presumed to have had actual knowledge of the limitations contained in the bill of lading, and to have assented thereto in express terms before the shipment began. *Snider v. Adams Express Co.*, 63 Mo. 376; *O'Bryan v. Kinney*, 74 Mo. 125; *Railroad v. Cleary*, 77 Mo. 634; *Kellerman v. Railroad*, 34 S. W. Rep. 41. (3) The provisions of the Constitution and laws of the State of Nebraska against limitation of liability by railroad companies are operative only within the boundaries of that State, and can not create a liability on the part of the respondent in the case at bar, because such liability could only be the result of an attempted regulation of commerce among the States, and said provisions of the Constitution and laws of that State would to that extent be void, as being repugnant to section 8, article 1, of the Constitution of the United States. *Hall v. De Cuir*, 95 U. S. 485; *Railroad v. Illinois*, 118 U. S. 557; *W. U. Telegraph Co. v. Pendleton*, 122 U. S. 347; opinion of Judge SHERWOOD in *McCann v. Eddy*, 27 S. W. Rep. 541.

MACFARLANE, J.—We agree entirely with Judge BIGGS, who wrote the opinion of the court of appeals, that, "according to the terms of the bill of lading, the defendant was to transport the car of corn to Council Bluffs and no further, and there to deliver it, at its warehouse, to some connecting carrier, for the purpose of completing its transportation."

It will be conceded that the railroad of defendant and the connecting carrier from Council Bluffs to East St. Louis are "connected together" within the meaning of the statute, and that the intention of the parties to the contract was that the corn should be delivered by defendant to the connecting carrier for the purpose of being transported to East St. Louis.

I.   Plaintiff insists, in the first place, that the part of the contract which attempts to limit defendant's liability to loss or damage occurring on its own road, is in violation of the Constitution of the State of Nebraska and is therefore void.

The provision of the Constitution that "the liability of railroad corporations as common carriers shall never be limited," has no application to contracts for the carriage of property to a destination beyond the terminus of the road of the receiving carrier. The limitation applies only to legal liabilities, and a common carrier is only required at common law to safely and promptly carry to the end of its own route, and there deliver to a connecting carrier. In the absence of contract it assumes no responsibility for the acts or omissions of connecting carriers. "No carrier," says Hutchinson, "is bound by law to accept goods for carriage further than the terminus of his own line, and if in any case, therefore, he is to become liable as a carrier beyond such terminus, his liability must be based upon some further obligation than that created

by law." Hutchinson on Carriers, sec. 145; 3 Wood on Railroads, p. 1877, sec. 424.

The contract in question is not, therefore, in contravention of the Constitution of Nebraska, as it attempts to secure to defendant no limitation on its duty and liability at common law.

II. Plaintiff insists, in the next place, that the statute imposes upon a railroad company, which receives freight for.transportation, the duty and liability of a common carrier throughout the entire route, though a part of the carriage must necessarily be over a road which passes through another State, and which is in the complete control of another corporation. Defendant insists that if such construction can be given to the statute, then it is in violation of the commercial clause of the Constitution of the United States, which gives to Congress the exclusive power to regulate commerce among the States.

It must be admitted that the intent and meaning of the statute is by no means clear. It fairly admits of more than one interpretation. It appears from the agreed statement of facts, however, that defendant promptly and faithfully performed the duty imposed upon it at common law, that is to say, it safely and within a reasonable time, carried the car of corn to Council Bluffs, and there delivered it to the proper connecting carrier. The loss was occasioned by the default of the connecting carrier, and at common law, and under the shipping contract, defendant is not answerable for it unless the liability is created by the statute. Unless, under a fair and reasonable construction of the statute, the legislature intended to make the company receiving the freight, responsible as a common carrier for the defaults of connecting carriers, there could be no recovery, though the act may be constitutional.

The question then is, can the statute be given the construction placed upon it by counsel for plaintiff.

The first sentence of the section in question declares: "Any railroad company receiving freight for transportation shall be entitled to the same *rights* and be subject to the same liabilities as common carriers." This declaration clearly and emphatically negatives any intention to impose any new obligation or liability. It recognizes the common law right of a common carrier to limit its liability to its own acts and omissions, and in effect declares that it shall remain inviolate. This sentence is the key to the interpretation of what follows. To give the remainder of the section the construction contended for by counsel for plaintiff would be destructive of the force and effect of what precedes. A statute should, if possible, be so construed as to make all its parts consistent.

The remainder of the section reads: "And whenever two or more railroads are connected together, the company owning either of said roads receiving freight to be transported to any place on the line of either of the roads so connected shall be liable as common carriers for the delivery of the freight to the consignee of said freight, in the same order in which such freight was shipped."

The construction turns upon the words, "receiving freight to be transported." To make these words consistent with what precedes them, they must be read in view of the right of a railroad corporation to answer only for defaults occurring on its own road. Defendant received this car of corn for the purpose of transporting it to Council Bluffs, and no further, though the final destination was East St. Louis. The contract expresses this undertaking of defendant in unequivocal terms.

The words of the statute "receiving freight to be

transported," apply to the extent of the undertaking of the initial carrier, and are not intended to impose a legal obligation on it to transport the freight to its. final destination, when there is no agreement to do so.

In order to make the different parts of the statute consistent, and to give it a reasonable construction, we must hold that the legislature only intended to prohibit a railroad company from making a contract for a through transportation of property, and, at the same time, to limit its liability to loss or damage occurring on its own road.

Prior to this statute the rule was well established in the United States Supreme Court, and most of the State courts, that each road, confining itself to its common law liability, is only bound, in the absence of contract, to safely carry over its own road, and safely to deliver to the next connecting carrier; but that any one of the companies may agree that its liability may extend over its whole route. In the absence of an agreement to that effect, such liability will not attach. *Railroad v. Mfg. Co.*, 16 Wall. 318; *Coates v. Express Co.*, 45 Mo. 240.

The rule in England and some of the States of the of the Union is, that a common carrier which accepts goods for transportation to a particular point, will be bound to deliver them at their destination, though beyond its own route, unless its liability is limited by contract. *Muschamp v. Railroad*, 8 M. & W. 421.

The evil the statute intended to correct is evidently that of permitting railroad companies after undertaking to carry freight, to a destination beyond the terminus of their own roads, to limit their liability to loss and damage occurring through their own acts and omissions. The Constitution prohibits limitations, by contract, of common law liabilities, and the statute was evidently intended to extend the prohibition to con-

tracts for transportation to points beyond the terminus of the road of the receiving carrier. It does not deny to a company the right to receive goods for transportation only on its own road, but denies it the right to limit its liability after contracting to carry beyond its own line. The statute, then, in our opinion means, and was only intended to require, that whenever two or more railroads are connected together, the company owning either of said roads receiving freight, and agreeing to transport it to any place on the line of either of said roads, should be liable for the safe delivery to the consignee at its destination. We have given a similar construction to a statute of our own State, whose provisions are in substance the same. *Dimmitt v. Railroad*, 103 Mo. 440; *McCann v. Eddy*, 133 Mo. 62.

In the former case it is said: "The act of issuing a receipt or bill of lading for property to be transferred to a place beyond the terminus of the route of a common carrier is evidence of a contract to carry such property to the place of its destination. This *prima facie* case the statute makes for the plaintiff on the facts stated. In order to defeat it, the defendant must show, that by specific agreement it only contracted to carry the property to the terminus of its own line, or what is equivalent, that there was a specific agreement that it was to be liable only for loss or damage occurring on its own line."

In the *McCann* case, *supra*, the contract was to carry to Chicago, which required the use of a connecting road, and we held that the carrier receiving the freight and agreeing to carry it to its destination was liable for loss or damage occurring on the road which undertook to complete the transportation, notwithstanding the attempt of the initial company to limit its liability to the omission of duty on its own road.

In this case we have an agreement, as specific as it

could well be made, that defendant only undertook to carry the corn to Council Bluffs, and there deliver it to a connecting road. Under the agreed statement of facts defendant faithfully performed its duty as a common carrier, under the contract.

The markings indorsed on the bill of lading giving the name of the consignee and the destination of the car of corn, in the absence of a specific contract, would be evidence of an agreement to transport to East St. Louis. But with the specific agreement to carry only to Council Bluffs these notations can only be regarded as mere memoranda for the information of the persons interested in the property and its delivery. *Dimmitt* case, *supra*.

It is suggested that the statute was intended merely to require that property received for transportation, should be shipped and carried to its destination, and there delivered to the consignee in the order, chronologically, of its receipt. The statute undoubtedly admits of this construction, but the complaint does not charge any discrimination in the order of the transportation. The action is not based upon such construction of the statute. The charge is that the corn was never delivered to the consignee at all, and the truth of the charge is admitted under the agreed statement of facts. The right to recover for the loss is predicated solely upon the supposed statutory duty of defendant to carry the corn to East St. Louis, and there deliver it to the consignee.

It could make no difference in this case which construction is given the statute, as defendant only undertook to carry to Council Bluffs and there deliver to a connecting carrier. According to the agreed statement defendant properly discharged its duty under the contract.

Whether the act would be unconstitutional under

plaintiff's interpretation of it, or under an agreement for a through shipment, it is unnecessary to inquire. In either case the judgment of the circuit court is for the right party and is affirmed. BARCLAY, C. J., GANTT, SHERWOOD, ROBINSON, and BRACE, JJ., concur. BURGESS, J., concurs in the result.