WILLIAM L. HICKS V. UNION PACIFIC RAILROAD COMPANY.

FILED MAY 3, 1906. No. 14;209.

1. **Carriers: PASSENGERS.** One who has not presented himself at the passenger station of a railway company or other place provided for the reception of passengers, and who has done nothing to indicate to the company's agents or employees that he intends becoming a passenger, and has in no way committed himself to the care or control of the company or placed himself in its custody, has not established the reciprocal relation of carrier and passenger, and cannot be regarded as a passenger being transported and under protection of the statute of the state.

2. **Directing Verdict.** Upon an examination of the evidence, *held*, that the court erred in withdrawing the questions of negligence and of contributory negligence from the jury and peremptorily directing a verdict.

ERROR to the district court for Dawson county: BRUNO O. HOSTETLER, JUDGE. *Reversed.*

*H. M. Sullivan* and *Warrington & Stewart*, for plaintiff in error.

*John N. Baldwin, Edson Rich* and *John A. Sheean*, contra.

AMES, C.

This is a proceeding in error to review a judgment for the defendant in an action to recover damages for a personal injury.

Hicks, who lived some distance from Gothenburg, in this state, went to that village one morning, in company with three other persons, with the intent to travel thence upon one of the defendant's railway trains to the village of Lexington, situate some distance to the eastward. Having arrived at the former town, the four persons stopped for breakfast at a restaurant lying to the northward of the railway line and passenger station of the defendant company. Before the meal was through with, it was an-

nounced by some bystander that the train upon which the party desired to take passage had arrived and was about to leave. This train was standing on a side-track southward from the passenger station, the building being between it and the plaintiff, and between the train and the building was the main line or track of the company. When the announcement was made, the party left the restaurant hurriedly and ran toward the station. Practically simultaneously, a through train not scheduled to stop at the village approached at a rapid, but it does not appear at an unusual, rate of speed from the west and swept over the track between the station and the train upon the siding. The country in that neighborhood is a flat or level prairie, and from any point at or within 300 feet north of the station the train on its approach could have been seen for a distance of several miles, but the plaintiff did not take the precaution to look in that direction, because, it seems, he did not apprehend the likelihood of the approach of a train from that direction at that time. The train on the side-track had arrived some five minutes before, and was emitting considerable noise, due to the "blowing off" or cleaning of the flues of the engine with blasts of steam, and his attention was not arrested by the sounding of the whistle and ringing of the bell of the incoming train, or by any other means, until he had run past the east end of the station and had crossed the main track, when his attention was attracted either by the hallooing of bystanders or by the noise of the incoming train, he is uncertain which, or perhaps by both, and he looked around and discovered the latter at a distance of about 400 feet. The incoming train was several minutes behind time, and in the usual course should have passed the station before the arrival of the standing train, but it does not appear that the plaintiff relied upon or was misled by that fact or that he knew of it. But the evidence shows that, at the time the plaintiff ran past the station and went upon the track, the conductor and a brakeman were standing on the north side of the main track waving their

35

hands and hallooing so as to warn people of the approach of the train and the danger attendant thereon. Immediately upon his discovery of the situation, the plaintiff became aware of immediate peril and became confused and morally irresponsible. Whether he attempted to retrace his steps across the main track, or to retreat further toward the standing train, or whether he practically stood still, he does not remember and perhaps never distinctly knew. At all events he was beside the track when the moving train swept past and was struck by some of its projecting parts, receiving injuries to recover damages for which this action was brought. His companions boarded the standing train unhurt.

The principal argument by counsel is of the question whether the plaintiff was a passenger being transported within the meaning of the statute, so as to impose upon the company the liability of an insurer of his safety. At the close of the plaintiff's evidence the court instructed the jury to return a verdict for the defendant, seemingly upon the ground of contributory negligence, but perhaps for the reason that in his opinion there was insufficient evidence of negligence by the defendant. We are unable to adopt the idea that the plaintiff was a passenger. He had not presented himself in the defendant's station, or upon its platform or other place provided for the reception of passengers. He had said or done nothing that indicated in any certain or unequivocal way to the company's agents or employees or even to the bystanders, except his three companions, that he intended becoming a passenger, nor in any way committed himself to the care or control of the defendant or placed himself in its custody, so that the reciprocal relation of carrier and passenger cannot with propriety be said to have been established. That some such act must be done, and some such relation entered into, in order to render one a passenger being transported, within the meaning of our statute and under its protection, is the central idea expressed by this court, after a review of the authorities, in *Fremont, E. & M. V. R. Co. v. Hagblad,* 72

Neb. 773, and ought now to be regarded as the settled law of this state.

Neither do we think, in view of the evidence disclosed by this record, that, as a matter of law, the defendant company was guilty of actionable negligence. The train that stood upon the siding was one that in railroad parlance is called a "local": that is, one that stopped at all the stations and did not run with great rapidity when in motion. The other is what is called a "fast mail," which stopped at only the more important stations at long intervals of time and space, and which maintained, and presumably was under contract with the United States government to maintain, a great rate of speed. That such trains unavoidably "lose time," or are behind their schedule occasionally, is a matter of common knowledge, as is also the fact that it is necessary for them, in order to fulfill their mission, to overtake and pass slower moving trains, and to meet and pass other trains standing upon sidings, and that such sidings are, and practically can be, maintained, at least in sparsely settled districts, only at local or way stations. That such a situation is one of considerable peril. is without doubt, but that the danger may be less than in like circumstances in more densely inhabited places is also obvious. That the company by its servants took some pains to warn the public of the dangers of the occasion is not disputed. Whether such means were such as ordinarily careful and prudent men would have regarded as commensurate with the peril or required by the circumstances is, we think, a question to be answered by the jury.

And so with respect to the conduct of the plaintiff. He was a man of mature years and a resident of the vicinage. He must be assumed, we think, to have had such general knowledge of the manner of operating the defendant's trains, and trains upon other railroads in like places, as was derivable from casual observation and readily obtainable by the public at large. But whatever may be the case in cities and densely settled communities the act of "run-

ning for a train" and of boarding one standing still upon a siding at a way station, without entering the building, is one which, in comparatively sparsely inhabited localities, is practiced daily by ordinarily careful and prudent men, and one which, in itself, is not regarded by such men as negligent or especially dangerous. But such an act may under special circumstances and perhaps under such as occurred in this instance, be done so heedlessly and recklessly as justly to expose the person committing it to the charge of negligence. Whether in this or any similar instance it does so is a question addressed to the judgment of ordinarily careful and prudent men after a consideration of all the circumstances, and one which therefore should, in our opinion, be answered by the jury. Every case depends largely upon its own peculiar features and surroundings, and although "the books are full" of decisions, and a great many are cited by counsel on both sides, it is seldom that two are exactly alike even in essential particulars, or that one can be found that can be regarded as a controlling precedent or authority for a subsequent case. This fact is, of course, due to the difficulty or impossibility of formulating rules of law which are capable of accurate application to diverse transactions, and hence the comparative rarity of cases in which a peremptory instruction to return a verdict for either party is permissible.

For these reasons, it is recommended that the judgment be reversed and a new trial granted.

OLDHAM and EPPERSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and a new trial granted.

REVERSED.