CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY V. GUSTAVE A. MANN.

FILED MARCH 21, 1907.    No. 14,248.

1. **Carriers:** SPECIAL PERMIT. A railroad company may make suitable and reasonable conditions and regulations for carrying passengers on its freight trains from which they are excluded except by special permission; and an agreement on the part of one holding a special permit, by which he assumes the risks incident to boarding the caboose of such trains at any place where it may be stopped for the purpose of conducting the freight business of the company, does not amount to a limitation of the carrier's liability for its own negligence.

2. ————: PASSENGER. One holding such a permit, while on his way through the station grounds and yards of the company to board the caboose of a freight train which does not carry passengers except by special permission, is not a passenger being transported over the company's road, within the meaning of section 10,039, Ann. St., and the duty which the company owes to him is only that of ordinary care.

3. ————: INJURY TO PASSENGER: EVIDENCE. Such a passenger cannot recover for injuries sustained by him while on his way to board the caboose of a freight train without proof of negligence on the part of the company in the construction or maintenance of its station, station grounds or yards, which is the proximate cause of such injuries.

ERROR to the district court for Adams county: ED L. ADAMS, JUDGE. *Reversed.*

*John C. Stevens, J. W. Deweese* and *F. E. Bishop,* for plaintiff in error.

*Tibbets, Morey & Fuller, contra.*

BARNES, J.

On the night of February 18, 1904, Gustave A. Mann, plaintiff below, fell into an ash pit between the rails of the railroad track of the defendant company while passing from the depot to the caboose of a freight train in which he was about to take passage from the city of Minden to his home in the city of Hastings. The result was a broken leg, to recover for which he brought this action against the company. Judgment being entered in his favor, the railroad company has taken error t' 'his court.

The material facts from which the question of the liability of the railroad company must be determined are the following: Mann, with four companions had been attending a shooting tournament at Minden, and went to the station in the evening in order to take a freight train to his home in Hastings. He was traveling agent for a brewing company, and had occasion in the course of his business to' make use of the freight trains of the defendant company. For this purpose he procured a permit from the railroad officials authorizing him to ride upon trains which did not carry passengers, except by special permission. The permit is in the following language: "Burlington & Missouri River R. R. Co. in Neb. (Chicago, Burlington & Quincy Ry. Co. Lessee.) Freight Train Permit. No. A 1027. 1904. Conductors, Freight Trains: When presented with regular transportation this will be your authority to carry Mr. G. A. Mann, Representing Dick Bros., between points where your train stops for other business. This permit is subject to conditions printed on back, which must be signed in ink by the per-

son named, but does not authorize agents to flag freight trains. Good until December 31, 1904, unless revoked. G. W. Holdrege, General Manager. A. B. Smith, Counter-signed. 1904. Nontransferable. This permit is granted at the special request of, and accepted by, the under-signed upon the following conditions, it being understood that greater danger attaches to riding on freight trains than on a passenger train: I hereby agree to assume all risk of accident to my person and loss or damage to my personal effects, and also to board and alight from freight trains only at points where such trains may be stopped for the convenience of the railway company. It is under-stood that freight trains do not as a rule start from or stop at stations with the caboose or coach at the station platform. Baggage will only be accepted for transporta-tion, under check, on freight trains when there is room in the ordinary equipment of such trains, when baggage may be loaded or unloaded from or to platform without requiring special stop, and when passenger with proper ticket travels on same train. G. A. Mann. (Sign in ink.)"

From the fact that the freight train which the parties were to take was late, they had to remain some time at the defendant's station. The train, on its arrival, stopped upon the first track north of the main track of defendant's road, the space between the two lines of track being about eight feet. The engine of the freight train was east of the depot, and the caboose several hundred yards to the west thereof. The train arrived in Minden about 9 o'clock P. M., the night being very dark. Some time after its arrival it was suggested by a Mr. Barnhardt, one of Mann's companions, that it would be well to go down in the yard and board the caboose, as it might not stop at the depot. The entire party then started for the caboose, going along the south side of the freight train, which consisted of about sixty cars. They traveled in the space between the north and south tracks until they came to a pile of cinders. They

then turned to the south between the rails of the main track, and three of the parties, including Mann, fell or stepped into the ash pit above mentioned. This pit was situated between the rails of the. main track, was about ten feet long and twelve or fourteen inches in depth, and was used for receiving the cinders dumped from the company's engines while taking water at the tank, which stood near the excavation. It is conceded that the train which Mann was attempting to board was a freight train which carried passengers only by special permission of the company, and that the four persons accompanying him had to obtain special permits to ride thereon.

At the request of the plaintiff below, the court instructed the jury as follows: "The jury are instructed that when the carrier of passengers by railroad does not receive passengers into the car at the platform erected for that purpose, but suffers passengers to enter at out of way places, it is its duty to use its utmost care in preventing accidents to passengers while so entering, and to provide for them a safe and convenient way and manner of access to the train, and to prevent, so far as possible, the interposition of any obstacles which would necessarily impede or expose them to harm while proceeding to take seats in the cars. And if you find in this case that defendant's agents were negligent, within the meaning of this instruction, and that the plaintiff was injured thereby, and you should find that the plaintiff did not, on his own part, contribute by his negligence to such injury, then your verdict should be for the plaintiff." The court further instructed the jury, in substance, that Mann on the way from the depot to the car was a passenger, and was not required to exercise that degree of care that is imposed on other persons, but had a right to assume and rely upon it that the company would make his way safe so that he might neglect precautions which are ordinarily imposed upon a person not a passenger, and that the company was required to exercise the strictest vigilance for his safety.

The giving of these instructions is assigned as error. This requires us to determine the legal effect of the contract above quoted, and the duty which a railroad company owes to one holding such permit, and who is about to take passage on one of its freight trains upon which passengers are carried only by such company's permission. It is contended by the plaintiff below that the contract limits the liability of the defendant company for its own negligence and is therefore unconstitutional and void. If this contention is sound the contract cannot be upheld. But we do not so construe the language of the permit. By it the company did not attempt to limit its liability to the plaintiff for its own negligence. It amounts simply to an agreement on the part of the plaintiff that, if permitted to ride on defendant's freight trains, from which passengers were excluded, by its proper and necessary regulations, he would board the same at such places as the caboose might be stopped for the convenience of the company in carrying on its freight business; that he would assume the ordinary risks incident thereto, and to the nature of such service when properly conducted. This was not a limitation of the liability of the company for its own negligence, but was a reasonable regulation which it might adopt for the purpose of carrying on its freight business. The rule is well settled that a railroad company as a common carrier may make and enforce such a regulation. 2 Rorer, Railroads, pp. 946-985; Hale, Bailments and Carriers, 491; *Burlington & M. R. R. Co. v. Rose,* 11 Neb. 177; *Illinois C. R. Co. v. Nelson,* 59 Ill. 110; *Chicago, St. P., M. & O. R. Co. v. Schuldt,* 66 Neb. 43; *Miller Grain & Elevator Co. v. Union P. R. Co.,* 138 Mo. 658; *Schaller v. Chicago & N. W. R. Co.,* 97 Wis. 31; *Hicks v. Union P. R. Co.,* 76 Neb. 496.

This brings us to the question of the defendant's duty to the plaintiff at the time the accident occurred. While Mann and the defendant company may have sustained, in a limited way, the relation of carrier and passenger,

yet he was not at that time a passenger being transported over the defendant's road, within the meaning of section 10039, Ann. St., and the duty which the company owed to him was only that of ordinary care. It is a well-settled rule that in the construction and maintenance of its depot grounds and yards, necessary, convenient and proper for the purpose of conducting its business, the company was only required to exercise ordinary care; and this was the extent of the duty it owed to the plaintiff while he was attempting to board its freight train. 2 Shearman and Redfield, Law of Negligence (5th ed.), sec. 501; *Fremont, E. & M. V. R. Co. v. Hagblad,* 72 Neb. 773; *Pennsylvania Co. v. Marion,* 104 Ind. 239, 3 N. E. 874. The plaintiff by his contract assumed the risk of walking through the yard in order to board the train in question, and it was not the duty of the defendant company to furnish him an absolutely safe pathway to any place where its caboose might be stopped for the purpose of conducting its business. He could not shut his eyes to the nature of the business, and when he accepted that mode of transportation he assumed the risks incident to the ordinary and proper method of carrying it on. It was said in *Murch v. Concord R. Co.,* 29 N. H. 9: "The party who makes an arrangement to be carried on a baggage wagon or a freight car impliedly agrees to accept and be satisfied with such accommodations, as regards carriages and seats and places of entering and leaving the carriages, as may be found in the usual course of the business. * * * The company, considered as owners of the road or as carriers, are not, in either case, bound to make landings, or any provision whatever for the reception or discharge of passengers where none are expected to be. The duties and obligations of parties are construed reasonably, with reference to the nature of their business." See *Oviatt v. Dakota C. R. Co.,* 43 Minn. 300; *Chicago, B. & Q. R. Co. v. Troyer,* 70 Neb. 287. Applying the foregoing rules to the facts of this case, it seems clear that the giving of the instructions complained of, was

reversible error.    Indeed, we find no evidence in the record showing, or tending to show, that the defendant company was guilty of negligence in constructing and maintaining the ash or cinder pit in question, or that its maintenance was not proper and necessary to enable the defendant to conduct its business at the station where the accident occurred.    Without proof of negligence in that respect on the part of the defendant, the plaintiff was not entitled to recover.

For the foregoing reasons, the judgment of the district court is reversed and the cause is remanded for further proceedings according to law.

REVERSED.