CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY V. E. H. MARTELLE.

FILED JULY 10, 1902.   No. 11,258.

Commissioner's opinion, Department No. 2.

1. **Amended Pleadings:** RIGHT TO FILE DURING TRIAL: DISCRETION OF TRIAL COURT: REVIEW. The question of the right to file amended pleadings during the trial is one which is confided to the discretion of the trial court, and unless the record clearly shows an abuse of discretion, the rulings thereon will be sustained.

2. **Petition:** RELIEF: DEMAND: STATUTE: PERSONAL INJURY: QUÆRE: WILL PETITION WITHOUT DEMAND SUSTAIN VERDICT? The third subdivision of section 92 of the Code of Civil Procedure provides that the petition shall contain "A demand of the relief to which the party supposes himself entitled. If the recovery of money be demanded, the amount thereof shall be stated." Will a petition to recover damages for a personal injury, which contains no demand for any relief whatever, sustain a verdict and judgment therefor?—*Quære.*

3. **Passenger Carried Past Destination:** JUMPING FROM TRAIN: CONTRIBUTORY NEGLIGENCE. A passenger who has been carried past his place of destination by a train which did not stop for him to alight, and who, without notice to or knowledge of those in charge of the train, simply to avoid being carried to the next station, jumps from the steps of the car to the

ground while the train is in rapid motion, and is injured thereby, can not maintain an action against the railroad company to recover damages therefor. *Chicago, B. & Q. R. Co. v. Landauer*, 36 Nebr., 642, approved and followed. *Omaha & R. V. R. Co. v. Chollette*, 33 Nebr., 143, *Union P. R. Co. v. Porter*, 38 Nebr., 226, and *Chicago, B. & Q. R. Co. v. Hyatt*, 48 Nebr., 161, distinguished and approved. SULLIVAN, C. J., dissenting.

ERROR from the district court for Butler county. Tried below before BATES, J. *Reversed.*

*J. W. Deweese* and *Frank E. Bishop,* for plaintiff in error.

*Matt Miller, contra.*

BARNES, C.

This case was tried in the district court of Butler county, and resulted in a verdict and judgment against the defendant railroad company for the sum of $3,500. A motion for a new trial was overruled, and the case comes to this court on a petition in error. The amended petition, upon which the case was finally submitted to the jury, is as follows (omitting title):

"The plaintiff complains of the defendant and for cause of action alleges and says:

"1st. That said defendant is a corporation, duly organized and existing under and by authority of the laws of the state of Nebraska, and is operating a railroad from Ashland, Nebraska, to Schuyler, Nebraska, and is a common carrier of passengers and freight for hire on said railroad.

"2d. That on the 9th day of January, 1898, and while the defendant was so operating said railroad it received the plaintiff as a passenger in one of its cars at Schuyler, Nebraska, to convey him from said place to Edholm, Nebraska, for the sum of thirteen cents, paid by the plaintiff to the defendant.

"3d. That on said day in managing and conducting the train and cars on which the plaintiff herein was a passen-

ger, the defendant and its employees were so negligent and careless that said train on approaching the station of Edholm commenced to slow up to stop at said station, but on arriving at said station did not come to a standstill, but nearly stopped just after arriving at the platform of said station, and that said train still running at a slow rate of speed passing the platform at said station and the plaintiff herein believing he could get off said car on which he was riding started to alight from said car and just as he was about to alight and started to alight from said car that said train was given a sudden jerk which then and there caused the plaintiff when alighting on the ground on his feet and then falling over he was injured by having his back and spinal cord hurt.

"4th. By reason of which the plaintiff was sick and has been lame and weak in his back for a space of nine months and unable to attend to his business, and is still in such condition and has expended for medical attendance before the commencement of this suit to Dr. Murphy of Octavia, Nebraska, the sum of $25.00 in all to his damage in the sum of $5,000."

To this petition the railroad company filed the following answer (omitting title) :

"Now comes the defendant above named, and for answer to the petition filed by the plaintiff, says that it is a corporation duly organized and existing under and by virtue of the laws of the state of Illinois, and that as such it owns and operates the line of railroad referred to in said petition, and did own and operate the same at the time referred to in said petition.

"Further answering said petition this defendant says that it is informed and believes that the plaintiff was a passenger on defendant's train running from the station of Schuyler to Edholm at the time stated in said petition; but the defendant denies each and every allegation stated in said petition, except such facts as are stated in this answer.

"The defendant further says that if the plaintiff got

off of said train while the same was in motion, as stated
in his petition or otherwise, and injured himself in getting
off, that such injury was sustained by reason of his own
carelessness, negligence and misconduct, and without any
fault of the defendant.

"Wherefore the defendant prays judgment against the
plaintiff for costs."

The reply was a general denial. The plaintiff in the
court below was allowed to file his amended petition after
the evidence on his part was introduced, to which the de-
fendant company objected and had its exceptions allowed,
and this ruling is assigned as error.

1. The question of amendments to pleadings is one which
calls for the exercise of the discretion of the trial court,
and unless it is shown that there was an abuse of such
discretion, the rulings upon such matters will be sus-
tained. In this case the defendant company made no
application for a continuance on account of the filing of
the amended petition, and the record fails to show that the
amendment caused any surprise, or was the occasion of
any injury to the rights of the company, or in any manner
necessitated a change in the trial. We hold that there
was no error in allowing the amended petition to be filed.

2. It is contended that the court erred in overruling the
objection to the introduction of any evidence on the part
of the plaintiff, for the reason that the petition did not
state facts sufficient to constitute a cause of action. It
is urged that inasmuch as the amended petition con-
tains no prayer for a judgment, it is faulty and defective,
and will not support or sustain the verdict and judgment
in this case. We are satisfied that the judgment of this
court must turn upon another question, and therefore we
do not decide this point. We will say, however, that in
all of the cases cited in support of the amended petition
there was some kind of a prayer for a judgment, however
defective it may have been. In this case there is no prayer
for any judgment whatever. It is true that the prayer
for relief is no part of the facts constituting the cause of

action, yet the Code requires that the petition shall contain a prayer for such relief as the plaintiff deems himself entitled to. Will a petition which contains no prayer for any relief whatever sustain a verdict and judgment, *quære?*

3. The defendant company at the close of all of the evidence, moved the court to instruct the jury that under the pleadings and the evidence the plaintiff was not entitled to recover, and to return a verdict for the defendant. This motion was overruled. The ruling was excepted to, and is now assigned as a ground for a reversal of the judgment of the lower court. Giving to the amended petition in this case a fair and reasonable construction, we find that it charges the railroad company with negligence in not stopping its train of cars at Edholm, the destination of the plaintiff, a sufficient length of time to permit him to alight therefrom in safety. It is true that the petition contains an allegation that just as the plaintiff went to alight from the car, and just as he was about to alight and started to alight therefrom the train was given a sudden jerk, which then and there caused the plaintiff, when alighting on the ground on his feet, to fall over, and he was injured thereby; but the charge of negligence is not based on this allegation. An examination of the evidence shows that it was not sufficient to sustain an allegation of negligence on this ground. Without considering any of the evidence of the defendant company, and giving the most liberal construction to that introduced by the plaintiff in support of his cause of action, we find it fairly established that the plaintiff in the court below purchased a ticket and became a regular passenger on the defendant's train from Schuyler to Edholm; that it was dark when the train reached that place; that the company did not stop its train so as to allow him to alight at his place of destination; that it slowed its train as it passed the station so that the plaintiff's companion, Streeter, got off, at a place about twenty feet beyond the depot platform; that the speed of the train was accelerated with a sudden jerk,

which is the jerk complained of by the plaintiff, and thereafter continually increased its speed until the plaintiff finally jumped off at a point some 150 feet east of the station; that the jerk spoken of occurred just as the plaintiff commenced to get off; that he remained on the steps of the car platform from that time until he passed several obstructions which he saw, and when clear of them he stepped or jumped from the steps to the ground; that by this time the train was going with such speed as to cause him to fall down after alighting on his feet, and in that manner he sustained the injuries of which he complains. It is shown that he did not request the conductor to stop the train and allow him to alight, and that none of the persons in charge thereof knew of his intention to get off while it was in motion. The undisputed evidence of the plaintiff having established the foregoing facts, we are required to determine whether or not, as the pleadings and the evidence stood at the close of the trial, the instruction tendered by the company should have been given. It was clearly the duty of the company to stop its train and allow the plaintiff to alight at his place of destination, and in not doing so it was guilty of negligence, but this negligence was not the proximate cause of plaintiff's injuries. Proximate cause is defined to be that cause which is nearest, most immediate to, and is the direct cause of the injury complained of. The negligence of the railroad company in carrying the plaintiff past his place of destination was not the proximate cause of his injury. An act is the proximate cause of an event when in the natural order of things, and under the circumstances, it would necessarily produce that event; when it is the first and direct power producing the result. Beach, Contributory Negligence, sec. 31. The act of plaintiff in stepping or jumping from the train while it was in motion answers to the above definition, and was in fact the proximate cause of his injury. In this matter no negligence of the defendant company is shown. It is not claimed that any one in charge of the train knew that plaintiff was about

42

to or did jump from the car steps at the time he claims to
have been injured.  In *Chicago, B & Q. R. Co. v. Landauer,*
36 Nebr., 642, a case where the plaintiff jumped from a
moving train, without as much time for reflection as
plaintiff had in the case at bar, this court held that there
could be no recovery, and that one who jumped from a
rapidly moving train of cars, under such circumstances
as exist in this case, was guilty of criminal negligence,
within the meaning of section 3, article 1, chapter 72, of
the Compiled Statutes of this state.  The plaintiff in the
court below testified on trial as follows:

"The train was going slower as it got past the platform,
when I jumped I lit on my feet and fell down afterwards;
struck on my feet first and then from the force fell over.
I lit on my feet at the bottom of the grade.

Q. You had been trying to get off all the way from the
station to where you did get off?

A. Yes, sir.

Q. That was the first time you could succeed in getting
off?

A. Yes, sir.

Q. And you knew the train hadn't stopped?

A. Yes, sir.

Q. Knew it was running all the time you were trying
to get off?

A. I knew it was moving along because I could see the
piles of ties there, that is why I didn't get off at the time
Mr. Streeter did; I could see the piles of ties and piles of
rails and when I thought it was safe to get off at the end
of these I got off; I did not try to get off until I could see
the end of these ties and rails.

Q. After you passed them then you tried to get off?

A. Yes, sir, I got off."

He also testified that he knew the trainmen were in
the front end of the same car but made no effort to let
them know that he wanted to alight, nor did he ask them to
stop the train and let him off.  The witness Streeter says
that he stepped off the car about twenty feet east of the

station platform when the train was going the slowest, "and then I thought it wasn't going to stop so I stepped off and after I stepped off I saw it started up faster. I heard it going faster. I heard it jerk as though it was going faster; I knew it started up faster.

Q. You stated that you heard the cars jerk up; how soon was it after you got off?

A. Right away; I heard it jerk up right away after I stepped off."

The plaintiff was a man possessed of his ordinary faculties, and knew at the time he stepped or jumped from the moving train that he had been carried past his place of destination, and that the train would not stop until it reached the next station. He could have remained in the car where he was perfectly safe from injury, and would only have been subjected to the inconvenience of being carried to the next station. For this wrong he had an adequate remedy in an action for damages against the company. He could have called the conductor and requested him to stop the train and allow him to alight in safety. Such request would probably have been complied with. Instead of adopting either course he concluded to take his chances and alight from the moving train. He was confronted by no immediate danger which would impel him to leap therefrom; there was no sudden emergency requiring instant action without opportunity for deliberation; he went to the rear platform, calculated his chances to alight, and deliberately waited until he thought his opportunity was good, when he stepped or jumped from the car steps. In so doing he must be held to have known the danger, and to have deliberately accepted the risk. Such action on his part was gross negligence, and amounted to an utter disregard of the danger into which he blindly plunged. It seems to us that there is no room for any other conclusion among men of reasonable intelligence and prudence than that to attempt to alight from a moving train under such circumstances, amounted to criminal recklessness. It is an established

rule of law that in the absence of anything to create excitement or alarm, to attempt to leave a car while in motion by jumping from the steps of the car platform to the ground is evidence of such negligence on the part of the passenger that he can not recover for any injuries resulting from such action. *Butler v. St. Paul & D. R. Co.*, 60 N. W. Rep. [Minn.], 1090; *McDonald v. Boston & M. R. Co.*, 2 Am. & Eng. R. Cases, n. s., 293*; *Jacob v. Flint & P. M. R. Co.*, 63 N. W. Rep. [Mich.], 502; *Rothstein v. Pennsylvania R. Co.*, 33 Atl. Rep. [Pa.], 379; *Burgin v. Richmond & D. R. Co.*, 115 N. Car., 673. It was held in the *Landauer Case* that when the carrier shows that the passenger was injured by stepping from its running train, the presumption of liability raised by law against the carrier is overthrown, and it then devolves upon the passenger to show some justification necessary for such action to relieve himself from the imputation of gross negligence. Plaintiff in this case failed to make any such showing, and it is demonstrated by the testimony that he was guilty of criminal negligence, and has not sustained the burden of justification put upon him by stepping or jumping from a running train. It is contended on the part of plaintiff that he is entitled to recover in this case by reason of the rule of law announced in *Omaha & R. V. R. Co. v. Chollette*, 33 Nebr., 143. An examination of that case shows us that the plaintiff attempted to alight from the train at the place of her destination; that the train did not stop a sufficient length of time to enable her to do so, but started up suddenly, thus throwing her to the platform. The facts in that case authorized a recovery. The decision in the *Union P. R. Co. v. Porter*, 38 Nebr., 226, is cited to support the plaintiff's right to recover. In that case the train had stopped to take water. The plaintiff, supposing of course that it would pull up to the station and stop a sufficient length of time to allow him to alight, stood upon the steps of the car platform, waiting until it should reach the depot.

---

*32 Atl. Rep. [Me.], 1010.

On arriving there he suddenly discovered that the train was not going to stop, and instantly, without opportunity for reflection, stepped off onto the platform of the station and was injured thereby. The court very properly held that he was entitled to recover. We approve of the decisions in both of these cases, but the facts in each of them are so unlike those in the case at bar that they are of no assistance to us in deciding this question. Upon principle and precedent we hold that, as the pleadings and the evidence stood at the close of the trial, the plaintiff was not entitled to recover, and the court erred in refusing to so instruct the jury. For this error the judgment of the district court should be reversed and the case remanded for a new trial. There are many other errors complained of in this record, but as we deem this one decisive of the case, as it stands, it is unnecessary to consider them.

For the foregoing reasons we recommend that the judgment of the district court be reversed and the cause remanded for a new trial.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

POUND, C., concurring.

I concur in recommending an absolute judgment of reversal. In my opinion, there was nothing for the jury, and the trial court should have directed a verdict. It is settled that where but one reasonable inference can be drawn from the facts the question of negligence is for the court. *Brady v. Chicago, St. P., M. & O. R. Co.*, 59 Nebr., 233; *Guthrie v. Missouri P. R. Co.*, 51 Nebr., 746; *Omaha & R. V. R. Co. v. Talbot*, 48 Nebr., 627. The same rule must apply to the question whether there has been "criminal negligence" within the meaning of section 3, article 1, chapter 72, Compiled Statutes. *Chicago, B. &*

*Q. R. Co. v. Landauer,* 36 Nebr., 642. Of course, it is not necessarily and inevitably criminal negligence to get off a moving train. *Omaha & R. V. R. Co. v. Chollette,* 33 Nebr., 143; *Union P. R. Co. v. Porter,* 38 Nebr., 226; *Missouri P. R. Co. v. Baier,* 37 Nebr., 235; *St. Joseph & G. I. R. Co. v. Hedge,* 44 Nebr., 448, 459. But there may be cases where such course was so manifestly hazardous, was so entirely unnecessary, and was taken so deliberately, that no reasonable man can say it was not grossly and criminally negligent. I think this is such a case. The injuries against which the statute makes the railroad company an insurer are those resulting "from the operation and management of the road," whether the result of negligence or not. *St. Joseph & G. I. R. Co. v. Hedge, supra; Union P. R. Co. v. Porter, supra.* In no sense does an injury which results from the deliberate recklessness of the passenger come within its purview. In this case the passenger had ample opportunity to make up his mind. He did so deliberately, chose his time and place, and at night, while the speed was increasing, got off a moving freight train. Every one knows that freight trains are subject to jerks and jolts as the speed is increased. Every one knows that the facilities for getting on and off such trains are poor. Every one knows that the night is no time to get off moving trains. Undoubtedly the plaintiff thought he could get off safely. Every one when he does a rash act proceeds in the hope that chance will operate in his favor. But if he chooses to put his trust in the chapter of accidents and deliberately risk life or limb, he does so at his peril. The law makes the company an insurer against all accidents or injuries growing out of the operation of the road. It does not make the company an insurer against the deliberate carelessness of the passenger himself.

SULLIVAN, C. J., dissenting.

There is in the evidence room for a considerable difference of opinion as to the speed of the train at the time

in question. And it is not certain whether it was the rate of regular motion, an element of danger which the plaintiff was bound to consider, or a sudden jerk, which he did not have reason to anticipate, that caused the accident. But in any view of the case, I think the trial court did not err in submitting the question of contributory negligence to the jury. There was, of course, some risk in getting off the train while in motion, but the act was not so obviously rash and foolhardy as to amount necessarily to criminal negligence. Criminal negligence is a convenient phrase to indicate that the degree of care required of the passenger is small. As defined by this court it means such "gross negligence as amounts to a reckless disregard of one's own safety, and willful indifference to the consequences liable to follow." In my judgment, it was for the jury to determine from its knowledge of men and of the motives that influence and control human conduct whether the act of the plaintiff was, under all the circumstances, within the definition quoted. To say that a strong, active and experienced man, who, to avoid being carried beyond his destination, gets off a slowly moving train, or a train moving with small velocity, is in every case foolishly heedless of consequences, and willfully indifferent to his personal safety, is to assert what every man accustomed to travel knows from his own experience and observation to be untrue. I readily concede that from the facts which the evidence in the record tends to prove criminal negligence might be reasonably inferred, but I deny that the inference is a necessary and inevitable one. If the plaintiff had not attempted to alight, and had gone on to the next station, I think his conduct would be generally regarded as unusual; it would probably stamp him in the opinion of most people as over cautious and somewhat deficient in ordinary courage. It would perhaps be better that passengers should submit to the inconvenience of being carried beyond their destination, rather than take the chance of being injured by alighting from a moving train; but we are dealing now with con-

ditions, and not with theories. It is a question of what men actually do in the situation in which the plaintiff was placed by the fault of the company's servants, not what the theorists think they ought to do. It seems to me perfectly plain that the criterion by which the plaintiff's conduct has been tried in this court is a false criterion. The standard man set up by the majority is, in my opinion, a mythical character; he is a man we do not meet in real life; he is wholly a creation of the judicial mind, and has no objective existence anywhere. I think it is doubtful whether the evidence in this case shows want of ordinary care, and I am very sure that it does not conclusively show on the part of the plaintiff that extreme degree of indifference to his own safety that constitutes criminal negligence. It was the business of the jury to fix the standard of commensurate care in the circumstances disclosed by the evidence, and to test the plaintiff's conduct by that standard. If in the discharge of this duty they did not reason irrationally and contrary to common sense, their decision should be final. *Chicago, R. I. & P. R. Co. v. Landauer,* 36 Nebr., 642. Upon questions of the kind here considered the opinion of a judge, however eminent, is, as every one knows, seldom, if ever, better than that of the average juror. And for this reason, it seems to me that the court has gone to an extraordinary, if not to an unprecedented, length in setting the verdict aside.

A more elaborate and perspicuous presentation of the views here expressed will be found in the following opinion.

OLDHAM, C., dissenting.

Not being able to fully concur in all the conclusions reached by my learned associate in his able opinion in this case, I deem it my duty to express my views in this separate and dissenting opinion. I agree with all that is said in the first paragraph of his opinion. With reference to the *quære* propounded in the second paragraph of his opinion I would say that in the case of *Fox v. Graves,* 46

Nebr., 812, this court has said: "Although the prayer for relief is a part of the petition, it is no portion of the statement of facts required to constitute a cause of action. The entire omission of any demand for judgment would not subject the petition to general demurrer." It would follow from the rule thus announced that plaintiff's omission of any demand for judgment in his petition would not and did not make the petition obnoxious to a general demurrer, and as the petition was not demurrable for having failed to state facts sufficient to constitute a cause of action, its defect was aided by answer and judgment.

I can not agree to the third syllabus of the opinion of my learned brother, in which he seeks to establish the rule that were "a passenger, who has been carried past his place of destination by a train which did not stop for him to alight, and who, without notice to, or knowledge of those in charge of the train, simply to avoid being carried to the next station, jumps from the steps of the car to the ground while the train is in rapid motion and is injured thereby, can not maintain an action against the railroad company to recover damages therefor." It does not seem to me that the reason for such a rule as this can be deduced from anything that was said by this court in the case of *Chicago, B. & Q. R. Co. v. Landauer*, 36 Nebr., 642, for in that case the train had stopped at the station a reasonable length of time for passengers to alight, and had started in motion again after the station had been called and the passengers had all been given an opportunity to alight in safety before the accident had occurred. So that nothing determined in that case would warrant this court in declaring as a question of law, that a passenger who is being carried past his place of destination by a train which did not stop for him to alight, and is injured while leaving the train while it is in motion, can not maintain an action against the railroad company for damages for the injuries so sustained. For in the case just cited, the court referring to section 3, article 1, chapter 72, of Compiled Statutes, says: "It is not such contributory

negligence for a passenger to jump from a moving train as will in every case prevent a recovery under the statute above cited; but where the circumstances are such as to render it obviously and necessarily perilous, and to show a willful disregard of the danger incurred thereby, such act amounts to criminal negligence, as above defined." In the case at bar plaintiff's testimony showed that the train on which he was a passenger for hire at the time the injury was received did not stop at the station of Edholm for which he was bound, at all, but that when it reached the station it slowed down so that he and Streeter, the only passengers who were on the train, thinking that the train was about to stop, went out on the platform to get off, and Streeter, who preceded the plaintiff, alighted from the train in safety. Plaintiff says he was deterred from immediately following Streeter in alighting from the train by reason of the fact that there were ties and rails along the side of the track when he had descended to the lowest step of the car platform, and on this account, according to his testimony, he did not alight from the train until it had gone about 150 feet east of the station platform; and he says that the train was not going at a rapid rate of speed when he started to alight from it, but that it gave a sudden jerk just as he was in the act of alighting and this jerk, according to his theory, caused the fall from which his injuries were received. Plaintiff was corroborated in his testimony as to the fact that the train did not stop at the station at all by Streeter, the other passenger on the train, and three bystanders who were at or near the depot at the time the train came in. It is true that the testimony of defendant's witnesses, the conductor, engineer and brakeman of the train, all tended to show that the train did stop at the station for about a minute before this accident occurred. But this disputed question of fact must have been found by the jury in favor of the plaintiff, for the trial court told the jury, in paragraph No. 8 of instructions given on its own motion, that if they believed from the evidence "that the defendant's train

stopped at the station at Edholm and that plaintiff had a reasonable and sufficient time to alight from said train in safety while said train was at rest, then the defendant would not be liable in the action and you should find for the defendant." The court also told the jury, in paragraph No. 10 of instructions given on its own motion, that "If you find the defendant's train stopped near the station of Edholm long enough to let the plaintiff get off the train and he did not get off but remained on until the train had gone some distance and then got off the train while it was running and on account of so getting off received the injury complained of that then he was guilty of negligence such as under the circumstances prevents his recovery against the defendant." In addition to these instructions, the trial court, after defining "criminal negligence" in the exact language used by this court in its definition of that term in *Chicago, B. & Q. R. Co. v. Landauer, supra*, told the jury in the ninth paragraph of instructions that if they found that the train did not stop at the station platform in Edholm, but that plaintiff was guilty of gross or criminal negligence in alighting while the train was in motion, they would find for the defendant. It seems to me that these instructions fairly stated every defense that was offered by the railroad company under the pleadings and evidence in the case. No instructions were requested by plaintiff at the trial below, and those which were requested by the railroad company and denied by the court each sought to ignore the liability entailed upon the company for injuries to its passengers under the provisions of section 3, article 1, chapter 72, of Compiled Statutes, and for that reason, as well as for the reason that the court on its own motion gave everything to which defendant was reasonably entitled under the issues, I do not think that any error was committed in the refusal of instructions.

I have thus far examined the liability of the railroad company under the facts and circumstances proved in this case solely in the light of the principles announced in

*Chicago, B. & Q. R. Co. v. Landauer, supra,* not unaware of the fact that this decision was rendered by a divided court, and that in subsequent decisions of this court involving the liability attaching to a railroad company for injuries to its passengers, this case, and much of the dicta which it announced, have either been distinguished or entirely ignored.  This is particularly noticeable in the subsequent case of *Chicago, B. & Q. R. Co. v. Hyatt,* 48 Nebr., 161, 167, in which it is held that: "It is not *per se* gross negligence for a passenger to alight from a moving train. Whether to do so constitutes such negligence as will defeat a recovery for injuries received is for the jury to determine, under proper instructions, from a consideration of all the evidence in the case."  The doctrine of this case is fully supported in principle by the more recent cases of *Chicago, R. I. & P. R. Co. v. Zernecke,* 59 Nebr., 689; *Chicago, R. I. & P. R. Co. v. Young,* 58 Nebr., 678, and *Chicago, B. & Q. R. Co. v. Wolfe,* 61 Nebr., 502.  I am, therefore, of the opinion that the question as to whether or not the plaintiff was guilty of gross or criminal negligence in alighting from the train was, under the facts and circumstances proved in the case at bar, a question of fact, to be submitted under proper instructions to the jury.

A more serious question is suggested, in my judgment, by the complaint urged in the brief of defendant railroad company (plaintiff in error) that the damages awarded are excessive under the allegations of the petition and all the evidence submitted at the trial.  After a description of the injury the petition alleges: "(4) By reason of which the plaintiff was sick and has been lame and weak in his back for a space of nine months, and unable to attend to his business, and is still in such condition, and has expended for medical attendance, before the commencement of this suit to Dr. Murphy of Octavia, Nebraska, the sum of $25, in all to his damage in the sum of $5,000."  It will be noticed that no permanent injury is alleged to have been occasioned by the fall which the plaintiff received in alighting from the train.  The proof offered by the

plaintiff tended to show at the most, that the plaintiff had sustained an injury to his spine by the fall, and that he had suffered considerable pain from the injury for four or five weeks after the accident, and that he had been totally or partially disabled from engaging in his avocation as a blacksmith for about a year after the injury. It also showed that he has been compelled to expend about $25 for medical attendance on account of the injury. While the testimony of the physician showed plaintiff to have received a severe and painful injury, it is very vague as to the probable lasting effect of the injury. It seems to me that under this testimony, and the allegations of the petition above set forth, the verdict of the jury awarding the plaintiff $3,500 damages was clearly excessive. I would therefore recommend that unless plaintiff enters a remittitur of $1,500 of the damages so assessed, within thirty days, that this cause be reversed and remanded, but that if such remittitur be entered, the judgment of the district court be affirmed.