WILLIAM OTTO, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, APPELLANT.

FILED SEPTEMBER 26, 1910.   No. 16,113.

1. Carriers: DUTY TO PASSENGERS. A stock shipper, riding on a freight train for the purpose of caring for his shipment of live stock, is entitled to the highest degree of care and protection consistent with the proper and careful operation of the train and with that means or method of transportation.

2. ———: ———: NEGLIGENCE. When such a passenger is compelled, by an attack of illness, to leave the train at his first opportunity, which fact is known to the conductor and those in charge of the train, it is negligence for them to knowingly permit him to leave the way-car while it is standing on an open bridge or trestle at a time when it is so dark that he is unable to see his surroundings or ascertain the danger.

3. ———: ———: CONTRIBUTORY NEGLIGENCE: QUESTION FOR JURY. The question as to whether, under such circumstances, the passenger was guilty of contributory negligence, is a proper one for the determination of the jury.

4. Trial: INSTRUCTIONS. Where the trial court has, on his own motion, fully and fairly instructed the jury upon all of the issues and the law of the case, it is not error to refuse to give additional instructions requested by the parties.

APPEAL from the district court for Richardson county: JOHN B. RAPER, JUDGE. *Affirmed.*

*James E. Kelby, H. F. Rose* and *Frank E. Bishop,* for appellant.

*Reavis & Reavis, contra.*

BARNES, J.

From a verdict and judgment in favor of the plaintiff, in an action for personal injuries, the defendant has appealed.

It appears that on the 13th day of December, 1907, the plaintiff shipped two car-loads of hogs over the defendant's railroad from Verdon, Nebraska, to Kansas City, Missouri. As is customary in such cases, plaintiff was furnished with transportation to enable him to accompany and care for his stock shipment. It may be stated at the outset that under his contract for transportation he was not entitled to the full measure of care and protection which the law would afford him had he been traveling on one of defendant's regular passenger trains; but he was, while accompanying his stock on defendant's freight train, entitled to receive the highest degree of care and protection from the defendant's servants and agents consistent with the nature of the train on which he was riding, and its proper and careful operation.

The train left the village of Verdon at 8 o'clock in the evening, and reached a point in the vicinity of the village of Nodaway about 3 o'clock the next morning. Before reaching Nodaway the plaintiff had an attack of sudden illness, and sought for a closet in the way-car, and, finding none, he informed the conductor of his condition and his necessity, and was told that the train would reach Nodaway in about 15 minutes where it would stop long enough for him to get off. After the lapse of about 15 minutes the train whistled and came to a stop. The plain-

tiff then asked the conductor if this was Nodaway, and was told that it was. When the train stopped the brakeman took his lantern and left the car, passing out of the rear door and closing it after him. About two or three minutes thereafter the plaintiff followed him. It appears that the train was not at Nodaway station, but had stopped short of that point because another train ahead had not cleared the block signal. The brakeman was aware of that fact, and says he left the train to go back and flag any other train which might have been approaching from the rear, and his knowledge must be imputed to the defendant. When the plaintiff reached the rear platform of the car he took hold of the railing, descended the steps, took one additional step, and alighted upon what he supposed was the roadbed. He says he saw what he took to be the brakeman's lantern; he then advanced an additional step, and landed in the bed of a river some 30 feet below; the way-car having stopped on an open bridge or trestle which there spanned the stream. It further appears that the night was pitch dark; that it was snowing or sleeting so it was impossible for the plaintiff to see the situation or ascertain the danger there existing. The brakeman testified that, by the light of his lantern, he saw the plaintiff come out of the car and descend the steps onto the bridge; that he called out to warn him of the danger. It seems clear, however, that either the plaintiff did not hear him, or that the warning came too late to be of any avail. The foregoing statement fairly reflects the undisputed facts of this case, and it is the defendant's first contention that they fail to show such negligence on its part as will entitle the plaintiff to recover for the injuries which it must be conceded, he thereby sustained.

For the following reasons, we are of opinion that this contention should not be upheld. The plaintiff was a passenger being transported on the defendant's freight train, and as such was entitled to the highest degree of care and protection from defendant's agents and servants consistent with the proper operation of its train and that

method of transportation. En route it became absolutely necessary for him to leave the train. This the conductor of the train well knew. Having such knowledge, he informed the plaintiff that the next stop was Nodaway, and that the train would stop long enough to enable him to alight and attend to the call of nature. As above stated, when the train stopped the conductor knew, or was charged with the knowledge, that they had not reached Nodaway station, and it was his duty to so inform the plaintiff. Knowing that the plaintiff was about to leave the car, the conductor should have notified him of his danger and warned him to look out for a safe place to alight. Not only was this the duty of the conductor, but a due regard for the safety of human life and limb should have impelled him to have exercised at least some reasonable precaution for the welfare of his passenger. This he did not do, but allowed the plaintiff to go forth into the darkness, following the brakeman, without consideration, or warning of any kind. We are therefore of opinion that his conduct constituted such negligence as entitles the plaintiff to recover.

It is strenuously contended, however, that plaintiff was guilty of contributory negligence, and therefore the verdict and judgment in his favor cannot be sustained. Many cases are cited by counsel for defendant in support of this contention. Among them we find *Chicago, B. & Q. R. Co. v. Martelle,* 65 Neb. 540, and *Chicago, B. & Q. R. Co. v. Mann,* 78 Neb. 541, decided by this court. In the *Martelle* case the plaintiff jumped from a rapidly moving train, while in the *Mann* case the plaintiff, in attempting to board a freight train, under an agreement to do so at his own risk, fell into a properly constructed ash pit. It was therefore rightly held in both cases that there could be no recovery. We have examined the cases cited from other jurisdictions and are satisfied that they are all distinguishable from the case at bar. In this case it appears, without dispute, that the plaintiff's condition made it imperative for him to leave the train at the first opportu-

nity.  His urgent necessity compelled haste, and he had been given permission by the conductor to alight from the way-car at the very time he made the attempt to do so.  Again, the brakeman had preceded him, and when he reached the platform of the car he saw what he took to be the brakeman's lantern some little distance away.  Therefore he had the right to assume that the car was standing at a place where it would be safe for him to alight.  It also appears that, notwithstanding his haste, he exercised at least some degree of caution, for he says that when he left the steps he kept hold of the railing of the car until his foot rested upon what seemed to him to be the solid roadbed.  Being thus assured of his footing, he let go of the railing, took a second step, and fell from the open bridge or trestle to the bed of the stream below.  Under such circumstances we are of opinion that the question of contributory negligence was one for the determination of the jury, and, both of the foregoing questions having been properly submitted to them, we should not disturb their verdict.

Finally, it is contended that the district court erred in giving paragraphs 1 to 5 of his instructions to the jury, and in refusing to give instructions numbered 4, 5 and 6, tendered and requested by the defendant.  Without discussing these several assignments separately, it is sufficient to say that we have carefully considered them, and are of opinion that the trial court did not err in giving and refusing instructions.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.